☑ Original    ☐ Duplicate

CLERK'S OFFICE
A TRUE COPY
Sep 03, 2025
s/ MMK
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin



# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. 25 MJ 137 |
| information about the location of the cellular telephones assigned call numbers (917) 442-0992 and (517) 918-0253, (the "Target Cell Phones"), whose service provider is T Mobile ("Service Provider"), a wireless telephone service provider headquartered at 12920 Se 38th Street, Bellevue, WA | ) ) ) ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before      09/17/2025      *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to      Honorable William E. Duffin      .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☑ for _30_ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      09/03/2025      _William E. Duffin_
                                                                      *Judge's signature*

City and state:      Milwaukee, WI      Honorable William E. Duffin, U.S. Magistrate Judge
                                                              *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

---

**Certification**

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number (917) 442-0992 and (517) 918-0253, whose wireless provider is T-Mobile, which is headquartered at 12920 SE 38th Street, Bellevue, Washington, 98006.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: JOSHUA WYLIE  are the persons to whom the pen register or trap and trace device are to be attached/applied and who are the subjects of the criminal investigation; (917) 442-0992 and (517) 918-0253 are the phone number to which the devices are to be attached; and Interstate Threatening Communications, in violation of Title 18, United States Code, Section 875(c); and Murder for Hire, in violation of Title 18, United States Code, Section 1958 are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

17

## ATTACHMENT B

### Particular Things to Be Seized
### with a Cell Site Simulator or Wi-Fi Geolocation Device

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.

1

In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be any of the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Devices; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Devices; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Devices.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2)

**Particular Things to Be Seized from Device Service Provider**

1.      Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.      All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.      Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call

1

measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) from **May 20, 2025 to present** pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4. To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5. This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

6. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7. This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described.  *See* 18 U.S.C. § 3103a(b)(2).

2



# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>information about the location of the cellular telephones assigned call numbers<br>(917) 442-0992 and (517) 918-0253, (the "Target Cell Phones"), whose service<br>provider is T Mobile ("Service Provider"), a wireless telephone service provider<br>headquartered at 12920 Se 38th Street, Bellevue, WA | )<br>)<br>)<br>)<br>)<br>)    Case No.   25     MJ     137 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 875(c) | Interstate Communication of Threats |
| 18 USC 1958 | Murder for Hire |

The application is based on these facts:

Please see Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**Kevin Kaiser**     Digitally signed by Kevin Kaiser<br>Date: 2025.09.02 13:09:52 -05'00'

*Applicant's signature*

Kevin Kaiser, Special Agent - FBI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:    09/03/2025

*Judge's signature*

City and state:   Milwaukee, WI       Honorable William E. Duffin, U.S. Magistrate Judge

*Printed name and title*

CLERK'S OFFICE<br>A TRUE COPY<br>Sep 03, 2025<br>/s/ MMK<br>Deputy Clerk, U.S. District Court<br>Eastern District of Wisconsin

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kevin Kaiser, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) to authorize law enforcement to employ electronic investigative techniques, as described in the following attachment, to determine the location of the target cellular devices with account associated to Phone Numbers **(917) 442-0992 and (517) 918-0253** referred to in this affidavit as the "Target Cellular Devices." The service provider for the Target Cellular Devices is T-Mobile. This affidavit is made in support of up to two different search warrants to locate the phone: 1) by obtaining information from the service provider, e.g., cell site and other precision location information and/or 2) by utilizing a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device. In addition, because this request may be construed as a Pen Register / Trap and Trace device or request, the application for this warrant (which includes this affidavit) is intended to comply with 18 U.S.C. § 3122.

2.      Under Federal Rule of Criminal Procedure 41, a magistrate judge having authority in any district where activities related to the crime may have occurred, may issue a warrant for property that is located outside the jurisdiction of any state or district.

3.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since April of 2023. Since April of 2023, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed

1

motor vehicle robberies, interstate threatening communications, and other violent crime matters, as defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities. I have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

4. The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that an individual named JOSHUA WYLIE has been using the Target Cellular Devices and did so while making threats in interstate communications. I know from training and experience that cell phone users normally have their cellular telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Cellular Devices will constitute and lead to evidence of violations of Title 18, United States Code, Section 857(c) Interstate Threatening Communications, and Murder for Hire, in violation of Title 18, United States Code, Section 1958. Accordingly, JOSHUA WYLIE is the "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

**PROBABLE CAUSE**

6.      COMPLAINANT, whose identity is known to law enforcement, resides at an address known to be located in the Northern Division of the Western District of Michigan. According to international travel records, WYLIE departed the U.S. on May 25, 2025.  According to an Expedia itinerary provided by WYLIE to COMPLAINANT, WYLIE is scheduled to return to Chicago O'Hare International Airport on August 5, 2025, at 7:00 PM.  Therefore, WYLIE was outside of the U.S. during the time the threatening communications were sent to COMPLAINANT.

7.      On July 29, 2025, Michigan State Police (MSP), Gladstone Post, Detective Sergeant (D/Sgt.) Joe Racicot telephonically contacted Special Agent (SA) Richard Grout, Detroit Division, Marquette Resident Agency, and alerted him to threatening communications COMPLAINANT received from WYLIE.

8.      On July 29, 2025, COMPLAINANT reported to the MSP Gladstone Post that COMPLAINANT's family member, WYLIE, sent COMPLAINANT texts and voicemails between July 21-28, 2025, offering COMPLAINANT up to $400,000.00 for the locations of VICTIM 1 and VICTIM 2, whose identities are known to your Affiant.  WYLIE explained that he already put out a $100,000.00 bounty to have them killed.  WYLIE used telephone number (917) 442-0992 to communicate with COMPLAINANT.  COMPLAINANT recognized WYLIE's voice from the voicemails.  COMPLAINANT did not know why WYLIE called and texted COMPLAINANT since COMPLAINANT has not had contact with him since he was in high school.

9.      Redacted photographs of some of the messages and transcripts of voicemail messages WYLIE sent to COMPLAINANT are below:

3









10.     Listed below is a timeline of messages and voicemails WYLIE sent to

COMPLAINANT:

5

a. Monday, July 21, 2025, 10:59 AM voicemail – "Hey [COMPLAINANT] it's Josh uh Wiley, uh I'm just calling you um. I put out $100,000 bounty to have um [VICTIM 2] and [VICTIM 1] killed, and I am willing to pay you uh $200,000 if you can just give me a heads up about where they're, you know, so I can let these hitmen know. Um, I mean, again, I'll pay you $200,000. If you want more, I'll pay you more. Um, I just wanna know where they're at so they can be killed. Thank you."

b. Monday, July 21, 2025, 11:57 AM text message – "I can pay you through Zelle or PayPal" and "Also have some dark web opinions (sic)."

c. Tuesday, July 22, 2025, 3:45 PM text message – "Okay, $400k – you run a hard bargain."

d. Friday, July 25, 2025, 11:06 AM text message – "[COMPLAINANT], both the FBI and ELPD called me – we had a long chat. After explaining everything, they agreed that this whole family is a bunch of cunts and they gave me the green light to kill [VICTIM 2] and [VICTIM 1]." "So, do you want to make money or just sit on the sidelines?" "Also, I'll give you a pass." "I think $400k is a fair payment." "I can wire it directly to your bank."

e. Friday, July 25, 2025, 11:13 AM voicemail – "Hey [COMPLAINANT] it's Josh WYLIE. Uh yeah, did you get my messages? I'm just trying to, uh, track down, uh, if I can get updates on [VICTIM 1] and [VICTIM 2], their locations so the hitmen can track 'em down. That would be awesome. Um, if you want more money, uh, let me know the money amount. Um, I'll up, up the money amount, but uh let me know. Give me a call. Uh, talk to you later. Bye."

6

f.  Friday, July 25, 2025, 1:06 PM text message – "[COMPLAINANT] – can't we be friends, give me a call."

g.  Sunday, July 27, 2025, 12:14 PM text message – "[COMPLAINANT], still waiting for your call.  What's that noise under your basement stairs?"  COMPLAINANT then inadvertently texted WYLIE, "Just received this text from Josh."  WYLIE then continued, "When can we hang?"  "And, do you like the show pawn stars?"

i.  Monday, July 28, 2025, 7:03 AM text message – "[COMPLAINANT]], you did nothing your entire life you rode [REDACTED] coattails, you married, [REDACTED], and you are what they call in the military, a dependaPotamus.  You used my parents.  Are you aware that when you were in East Lansing, at beggars banquet [VICTIM 2/VICTIM 1] texted Colleen as soon as you left because Colleen does not like you..  [COMPLAINANT], are you aware that your own son doesn't like you?"  "Send it".  "Hurt people- hurt people."  "But, we can still be friends."

j.  Monday, July 28, 2025, 5:09 PM text message – "Checking in [COMPLAINANT].  Flying into Chicago early August".  "Go cry to the town – you fucking cunt."  "Josh just sent this text".  WYLIE then sent an image of his flight itinerary, pictured below.  "Are you still in Cornell, fatty?"

7



11.     COMPLAINANT advised that WYLIE was currently in Vienna, Austria, and was scheduled to return to the U.S. on August 5, 2025.  According to an Expedia flight confirmation WYLIE sent to COMPLAINANT, on August 5, 2025, WYLIE is scheduled to depart Vienna for Dublin, Ireland, on Aer Lingus flight 661.  On August 5, 2025, WYLIE is then scheduled to depart Dublin via Aer Lingus flight 125 and arrive in Chicago, Illinois, Chicago O'Hare International Airport (ORD) at 7:00 PM Central Time.  COMPLAINANT did not know why WYLIE chose Chicago as a flight destination, except that it is in close proximity to the city in Wisconsin, where VICTIM 1 resides.

12.     WYLIE contacted COMPLAINANT from telephone number (917) 442-0992.  According to COMPLAINANT, WYLIE contacted VICTIM 2 from telephone number

8

(517) 918-0253 after VICTIM 2 blocked WYLIE's original number. T-Mobile is the provider for both phone numbers.

13. According to international travel records, WYLIE departed the U.S. on May 25, 2025. As of July 30, 2025, there was no record of WYLIE reentering the U.S. Therefore, I believe Wylie sent the threatening texts and voicemails from outside the U.S. to COMPLAINANT, who resides in Michigan. VICTIM 1 resides within the Eastern District of Wisconsin. VICTIM 2 resides in North Carolina.

14. According to COMPLAINANT, WYLIE served two tours in Iraq while in the U.S. Army. COMPLAINANT described him as mentally unstable with anger issues and an alcoholic. After the Army, WYLIE worked for a "contractor" driving dignitaries. (The FBI confirmed that as of 2016, WYLIE claimed he worked for the private security company Triple Canopy. According to open-source information, Triple Canopy merged with Academi, which was formerly known as Blackwater.) WYLIE came home from the Middle East to live with his parents in East Lansing, Michigan, after not getting the COVID vaccine. In December 2023, WYLIE assaulted his mother and father and pointed a gun at his father. The parents reported this to the police and obtained a restraining order. COMPLAINANT advised that WYLIE "has a love for guns" and has a lot of them. COMPLAINANT believed WYLIE has access to the money he talked about because of his contract work and how he talked about the amount of money he was paid. According to COMPLAINANT, WYLIE did not want to move back to the U.S. full time because he would have to report the income and pay taxes on it.

15. COMPLAINANT believes that WYLIE is targeting VICTIM 1 because VICTIM 1 requested a welfare check on WYLIE's parents while he was living there, just prior to his assault on them. COMPLAINANT does not know why WYLIE is targeting VICTIM 2. According to

9

COMPLAINANT, VICTIM 1 and VICTIM 2 received direct threats from WYLIE via text and voicemail, and COMPLAINANT believed VICTIM 1 and VICTIM 2 reported the threats to local law enforcement.

16.     According to WYLIE's criminal history, on December 22, 2023, he was arrested for Assault Excluding Sexual by the East Lansing Police Department, incident number 2336403829, for the assault against his parents. WYLIE was later convicted of misdemeanor domestic violence. An injunctive order entered December 27, 2023, currently bars WYLIE from purchasing or possessing firearms. The injunctive order expires on December 23, 2025. However, it is unknown if WYLIE still possesses or has access to firearms. As of December 2023, East Lansing Police Department observed several firearms in the East Lansing home where WYLIE resided at the time.

17.     On July 30, 2025, FBI SA Robert Rice interviewed VICTIM 1, who resides at a known address in the Eastern District of Wisconsin. On June 14, 2025, VICTIM 1 reported threats and threatening behavior from WYLIE to the Caledonia Police Department (CPD). VICTIM 1 later learned from COMPLAINANT that WYLIE hired someone to kill VICTIM 1 and VICTIM 2. On July 31, 2025, your Affiant and FBI Task Force Officer Caleb Porter interviewed VICTIM 1 and learned WYLIE did not directly send threatening messages or calls to VICTIM 1. VICTIM 1 reported the threats to CPD, who increased patrols in VICTIM 1's neighborhood and will put out a safety bulletin to the department. VICTIM 1 is afraid for their safety, their family's safety, their neighbor's safety, and the safety of the CPD officers as VICTIM 1 does not want WYLIE to hurt anyone. VICTIM 1 is installing a Ring Doorbell and surveillance cameras at VICTIM 1's residence.

10

18.     On July 31, 2025, FBI SA Richard Sutherland interviewed VICTIM 2, who resides at a known address in North Carolina. In June 2025, WYLIE left VICTIM 2 several voice messages to tell VICTIM 2 that VICTIM 2 was a "cunt" and a troublemaker and that he would come talk to her about it in person. WYLIE never made a direct threat to VICTIM 2 but felt his language about seeing VICTIM 2 in person was a veiled threat. Because of these messages, VICTIM 2 reported them to local law enforcement on June 14, 2025. VICTIM 2 did not keep the messages. WYLIE normally tried to communicate with VICTIM 2 from telephone number (917) 442-0992. However, on July 9, 2025, WYLIE left VICTIM 2 a voicemail message from telephone number (517) 918-0253. VICTIM 2 recognized the caller's voice as WYLIE's. COMPLAINANT shared messages with VICTIM 2 that COMPLAINANT received from WYLIE. VICTIM 2 does not believe WYLIE knows where VICTIM 2 lives.

19.     On July 31, 2025, Special Agent (SA) Richard Grout interviewed COMPLAINANT. COMPLAINANT provided SA Grout with three audio files of voicemail messages she received from WYLIE. The transcripts of two of the voicemail messages are documented above. In the third voicemail, WYLIE asked COMPLAINANT to return his call at telephone number (917) 442-0992. COMPLAINANT confirmed that COMPLAINANT shared WYLIE's threatening messages with VICTIM 1 and VICTIM 2. COMPLAINANT accidentally sent a text to WYLIE that was meant for someone else. This message indicated that COMPLAINANT shared WYLIE's messages with someone else. Because of this, COMPLAINANT was afraid the WYLIE would target COMPLAINANT as well. However, as of July 31, 2025, WYLIE has not made any direct threats to COMPLAINANT.

20.     On August 1, 2025, the Honorable Nancy Joseph signed a federal search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information

11

about the location of the cellular telephone assigned call numbers (**917) 442-0992** and (**517) 918-0253** (**TARGET CELL PHONES**).

21.     On August 1, 2025, a federal criminal complaint was filed, and an arrest warrant was issued for WYLIE out of the Eastern District of Wisconsin for 18 U.S.C. § 875(c) Interstate Threatening Communication and 18 U.S.C. § 1958 Murder for Hire.

22.     On August 5, 2025, WYLIE did not board his flight from Moldova to Chicago. Instead, his cell site records reflected that his cell phones remained in Moldova.

23.     As of September 2, 2025, all ping and cell phone location data for phone numbers (917) 442-0992 and (517) 918-0253 have shown the devices in Moldova.

## AUTHORIZATION REQUEST & MANNER OF EXECUTION

24.     I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) and 2711.

25.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

26.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

27.     In my training and experience, I have learned that T-Mobile is a company with its headquarters located within the United States and provides cellular telephone access to the general

public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of cellular devices to which they provide service. That information includes (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) timing advance or engineering data commonly referred to as per call measurement data (RTT, Timing Advance, LOCDBOR, or equivalent). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

28.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device) capable of broadcasting signals that will be received by the Target Cellular Devices or receiving signals from nearby cellular devices, including the Target Cellular Devices. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Devices and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular

13

Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

29.     The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Devices, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices are collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

30.     I request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cellular devices would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified

in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

31.     I further request the following information from the service provider: the installation and use of a pen register trap and trace device, all real-time precision location information, including E-911 Phase II data, GPS data, and latitude-longitude data, real time cell site information, and per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) beginning 30 days from the date the warrant is issued.

32.     I further request call detail records and data reports (voice, SMS, MMS), including cell site location information, originating and destination IP addresses, per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) from May 20, 2025, to present.

33.     I further request subscriber and extended subscriber information, handset identifiers, handset make and model, Wi-Fi MAC address, and account notes and memos for the target device.

34.     I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cellular device outside of daytime hours.

35.     I further request that the pen register / trap and trace device be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Devices; any changed ESN, IMSI, or SIM subsequently assigned the same

15

dialed number as the Target Cellular Devices; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Devices.

36.     I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

37.     A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

## **ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number (917) 442-0992 and (517) 918-0253, whose wireless provider is T-Mobile, which is headquartered at 12920 SE 38th Street, Bellevue, Washington, 98006.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: JOSHUA WYLIE  are the persons to whom the pen register or trap and trace device are to be attached/applied and who are the subjects of the criminal investigation; (917) 442-0992 and (517) 918-0253 are the phone number to which the devices are to be attached; and Interstate Threatening Communications, in violation of Title 18, United States Code, Section 875(c); and Murder for Hire, in violation of Title 18, United States Code, Section 1958 are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

17

## ATTACHMENT B

**Particular Things to Be Seized**
**with a Cell Site Simulator or Wi-Fi Geolocation Device**

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.

1

In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be any of the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Devices; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Devices; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Devices.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2)

2

**Particular Things to Be Seized from Device Service Provider**

1.      Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.      All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.      Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call

1

measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) from **May 20, 2025 to present** pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4.  To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5.  This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

6.  The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7.  This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).

2